Ervin D. WESSON
v.
Sgt. B. F. MOORE, Corr. Officer.
Civ. A. No. 73–342–R.

United States District Court,
E. D. Virginia,
Richmond Division.

Oct. 25, 1973.

---

---

Ervin D. Wesson, pro se.

William A. Carter, III, Asst. Atty. Gen., Richmond, Va., for defendant.

## MEMORANDUM

MERHIGE, District Judge.

Plaintiff, a Virginia prisoner incarcerated at Field Unit No. 26, Haymarket, Virginia, complains of action by the defendant, Moore, a correctional officer at the institution where plaintiff is incarcerated, in submitting an allegedly false report concerning plaintiff's behavior. The report, so plaintiff alleges, resulted in further action by an Institutional Classification Committee (ICC) changing his security status from trustee to maximum security. Plaintiff seeks monetary damages for the loss of privileges he has suffered as a result of this allegedly wrongful security reclassification. He also seeks an order requiring that he be reinstated to trustee status.[1]

Jurisdiction is attained by virtue of 42 U.S.C. § 1983, 28 U.S.C. § 1343. The matter is presently before the Court pursuant to defendant's motion for summary judgment. Plaintiff has responded to that motion and the matter is now ready for disposition.

Basically, the facts are as follows: On July 2, 1973, defendant Moore submitted a report which contained evidence tending to establish that plaintiff had, on that date, left the institutional grounds

---

1. In addition, plaintiff seeks an order which is beyond the Court's authority discharging the defendant correctional officer, Moore, from his position at the institution where plaintiff is incarcerated. The Court's remedial powers are not so broad as to include supervisory authority over the personnel policies of the state penal administration. No further consideration to this particular request is necessary.

without permission.[2]  On July 3, 1973, an Institutional Classification Committee hearing was held, at which time plaintiff was given an opportunity to present witnesses in his behalf and to rebut the information contained in defendant Moore's report.[3]  Plaintiff did in fact present four witnesses in his behalf.[4]  However, apparently unpersuaded by the evidence which plaintiff presented and acting on the basis of Moore's written report, the ICC determined to increase plaintiff's security status from trustee to maximum security.

Plaintiff alleges that defendant Moore's report was falsely made and that the reason for this false report was Moore's personal animus toward the plaintiff.

■ First, with respect to plaintiff's claim for monetary damages, it is not clear whether he seeks such relief against the State of Virginia or against the defendant, Moore, personally.  While the plaintiff does mention the State in his prayer for relief, he has not formally named the State as a party defendant in this action.  However, even giving plaintiff's complaint a liberal interpretation so as to include the State as a defendant in this action, it is clear that the Eleventh Amendment to the United States Constitution and the Doctrine of Sovereign Immunity bar such claims for monetary damages against the State in federal court.

It is also clear, on the record before the Court, that any claim which plaintiff would assert against the defendant, Moore, personally, for money damages must likewise fail.

It may well be that the knowing submission of a false report by one acting under color of state law, which report is reasonably calculated to serve as the basis for official action detrimental to the interests of a private citizen, would be an actionable wrong under 42 U.S.C. § 1983 and one for which damages might be an appropriate remedy.  However, the thrust of plaintiff's complaint is that he had not, in fact, left the institutional grounds on the date in question.  Even assuming plaintiff could establish this as a fact, he could not, by that alone, show that defendant Moore had knowingly submitted a false report.

At no point in his report did defendant Moore categorically state that the plaintiff had left the institutional grounds on the date in question.  The bulk of the information contained in the report was information that had been given to Moore and other prison officials by a citizen residing near the institution.[5]  Moore has attested to the fact that such information had been received by or relayed to him.  Even assuming the information given to Moore and others by this citizen was, in fact, false or inaccurate, Moore's reporting that such information had been received would not have been an act of misfeasance unless it could be shown further that Moore, himself, knew such information to be false or inaccurate and failed to so indicate.  Only his statement that he had seen the plaintiff running from the direction where the citizen had reported seeing a convict and that the plaintiff had been wearing clothes matching the description given by that citizen, was based on Moore's own observations.

■■ In response to defendant's motion for summary judgment, plaintiff has merely stated the bald conclusion that Moore "has lied and made a mistake in his action, which he knows but refuses to admit."  Plaintiff has made no offer of proof to show either that the citizen in question had not, in fact, made

---

2.  Copies of the report are contained in Defendant's Exhibits I and II.

3.  Summaries of the proceedings are contained in Defendant's Exhibits I and II.

4.  See Defendant's Exhibits I and II.

5.  According to Moore's report, the citizen had telephoned in to report that she had seen a convict trying to get into her house and later identified the plaintiff, by photograph and in person, as the convict she had seen.

the report claimed [6] or that Moore had not, in fact, seen plaintiff running from the direction where the citizen had reported seeing a convict wearing clothes matching the description which the citizen had reported. Nor has plaintiff made any offer of proof to show that Moore had reason to disbelieve the citizen's report. Accordingly, it is the conclusion of the Court that defendant's motion for summary judgment should be granted, pursuant to Rule 56(e), Fed.R. Civ.P., as to plaintiff's claim for monetary damages and that judgment should be entered for the defendant on that claim.

With respect to his request for an order returning him to trustee security status, the essence of plaintiff's claim is a challenge to the actions of the Institutional Classification Committee, as that is the official body which made the decision to place him on maximum security status.

■ Previous decisions by this Court make clear that it does not sit as a "prison review agency." See, e. g., Ferrell v. Huffman, 350 F.Supp. 164, 165 (1972). The Court's authority with respect to the actions of state penal officials is limited to providing redress for constitutional deprivations by such officials. Ferrell v. Huffman, *supra*, at 165–166.

■ The decision in Ferrell v. Huffman, *supra*, also makes clear that, because of the limited nature of the functions performed by institutional classification committees within the Virginia penal system, the grounds for a legal attack of ICC decisions are extremely limited. With respect to substantive matters, the scope of review is normally limited to deciding whether the ICC action taken was arbitrary,[7] or punitive.[8]

---

6. Plaintiff, himself, would not be competent to testify that most of this information had not, in fact, been reported to Moore and other prison officials by the citizen in question, as he would not have been present when most of this information had allegedly been received. The only time plaintiff would have been present was when the citizen allegedly identified the plaintiff in person. Even here, such identification might have been reported to Moore out of plaintiff's presence. In any case, plaintiff has not specifically denied that such identification was made.

7. In order for prison officials to establish that a particular ICC action taken was not arbitrary or capricious, it is sufficient that such officials present a record which reflects a genuine problem with respect to matters committed to ICC administration and to show that the action taken is such as would reasonably be calculated to remedy the problem involved. See, e. g., Cary v. Slayton, C. A. No. 565–72–R (E.D.Va. Jan. 1, 1973) (security reclassification based on a history of disciplinary problems); Wilson v. Oliver, C.A. No. 24–73–R (E.D.Va. Feb. 28, 1973) and Armstrong v. Oliver, C.A. No. 279–73–R (E.D.Va. July 5, 1973) (prisoners placed in padlock status for security reasons pending further investigation of their implication as participants in or witnesses to stabbing incidents at the prison); Nimmo v. Oliver, C.A. No. 163–73–R (E.D.Va. July 19, 1973) (security reclassification based on confidential

reports by other inmates of prisoner's constant attempts to instigate prison disturbances); Lloyd v. Oliver, 363 F.Supp. 821 (E.D.Va. 1973) (job transfer within the prison based on job supervisor's report of prisoner's unsatisfactory attitude toward his prior job).

8. By this is meant that punishment for a prison rules violation cannot serve as the legitimizing rationale for ICC action taken. It must be shown that some other institutional interest, such as inmate or prison security, is involved.

This prohibition against punitive action by the ICC is premised on the recognition that, under the Virginia penal system, ICC interests are limited to such matters as institutional security and inmate job placement and that the actions which ICCs are empowered to take are generally less severe than would typically be involved in a punitive proceeding. See Ferrell v. Huffman, *supra*. Accordingly, past decisions by this Court have imposed a more flexible procedural due process standard with respect to ICC actions than would be the case if punitive actions were involved. See discussion, infra.

By contrast, under the Virginia penal system, administrative punishment for institutional rules violations is determined by an Institutional Adjustment Committee and the requisite elements of procedural due process which the Constitution mandates therefor are set forth in detail in Landman v. Royster, 333 F.Supp. 621 (E.D.Va.1971).

Ferrell v. Huffman, supra, at 166. In addition, ICC decisions are subject to attack, as are all actions by state officials, on the ground that they constitute a denial of equal protection. See Moore v. Howard, C.A. No. 73–373–R, mem. decis. (E.D.Va. July 25, 1973).

■ With respect to the procedures employed in an ICC action, the Court will inquire only as to whether the minimum due process standards applicable in a non-criminal proceeding have been met. See Coles v. Cunningham, C.A. No. 98–73–R, mem. decis. (E. D.Va. Oct. 5, 1973) (guarantee against self-incrimination inappropriate absent actual compulsion in ICC contexts). Those standards, in turn, are flexible and may vary from case to case depending upon the nature of the decision to be made and the extenuating circumstances involved. See, e. g., Nimmo v. Simpson, C.A. No. 163–73–R, mem. decis. (E.D. Va. July 19, 1973) (opportunity to cross-examine confidential informant as to plaintiff's alleged activities aimed at causing prison disturbances not required in an ICC security classification hearing where identification of the informant might cause him to be placed in grave bodily danger) and Lloyd v. Oliver, 363 F.Supp. 821 (E.D.Va.1973) (no hearing required for institutional job transfer by ICC). Specific issues which arise in

a given case or type of case are to be resolved by balancing the competing interests involved.

■ As to the ICC action taken in the instant case, it is the conclusion of the Court that such action was neither arbitrary nor punitive. The record on which that action was based clearly reflects a legitimate question as to plaintiff's trustworthiness.[9] The decision to increase plaintiff's security status was an appropriate attempt to forestall any future abuse by the plaintiff of the trust that had previously been placed in him, and cannot, therefore, be interpreted as merely an attempt to punish him for his alleged wrongdoing. Finally, as regards substantive matters, plaintiff has not alleged anything which suggests intentional discrimination on the part of the ICC.

■ However, the Court is not satisfied, at this stage of the proceedings, that the procedures employed by the ICC in reaching its determination to change plaintiff's security status provided the minimum due process that could reasonably be expected under the circumstances. The record does not reflect that the defendant, Moore, who had reported the plaintiff's possible rules infraction, was present[10] at plaintiff's reclassification hearing and available for questioning by the plaintiff, nor has the

---

Finally, as a point of clarification, it is to be noted that, in a given case, an institutional rules violation may serve as a basis for independent ICC action, whether or not punitive action has also been taken by an Institutional Adjustment Committee. ICC action should never serve as a substitute for punitive action by and Institutional Adjustment Committee, while avoiding the full spectrum of procedural requirements set forth in Landman v. Royster, supra. Nor should the ICC ever be used as a vehicle for meting out punishment in addition to that imposed by an Institutional Adjustment Committee. However, it may often be the case that the nature of the particular rules violation charged is such as would raise a legitimate concern with respect to institutional security and serve as the basis for an ICC security reclassification, with or without punitive action by an Institutional Adjustment Commit-

tee. Cf. Odom v. Young, C.A. No. 73–341–R (E.D.Va. Sept. 4, 1973).

9. The fact that such record may have contained false or mistaken information, as plaintiff contends, is immaterial to this litigation as this Court does not sit to review the credibility or weight of the evidence presented in ICC hearings.

10. It is to be noted that the citizen who had originally reported seeing the plaintiff outside the institutional grounds also was not present at plaintiff's reclassification hearing. That, however, is understandable. Unlike the defendant, Moore, who is an employee of the penal institution, the citizen in question is not subject to the control of penal authorities so that her presence could be required. Nor do penal authorities have the power of process by which they could compel the presence of such private citizens at ICC reclassification hearings.

defendant offered any explanation why his absence from that hearing should be excused.

 It is possible, of course, that there are extenuating circumstances that would justify Moore's absence from the hearing. *Cf.* Nimmo v. Simpson, C.A. No. 163–73–R, mem. decis. (E.D.Va. July 19, 1973). However, the presumption must, in the absence of extenuating circumstances, be in favor of the opportunity of an accused inmate to confront and cross-examine the witnesses against him, even in a non-punitive, ICC reclassification hearing, where the witnesses in question are subject to control by the penal authorities.[11] The burden is on penal authorities to explain why such opportunity should not be provided in a given circumstance. See, *e. g.*, Nimmo v. Simpson, *supra*. Because that burden has not been met at this stage of the proceedings, defendant's motion for summary judgment will be denied with respect to plaintiff's request that penal authorities be required to place him back on trustee security status.

An appropriate order shall issue.