Antonio **ALMANZA**

v.

**R. M. OLIVER, Superintendent, et al.**

**Civ. A. No. 73–445–R.**

United States District Court,
E. D. Virginia,
Richmond Division.

Dec. 3, 1973.

Antonio Almanza, pro se.

Burnett Miller, Asst. Atty. Gen. of Va., Richmond, Va., for defendants.

### MEMORANDUM

MERHIGE, District Judge.

Plaintiff, an inmate at the Virginia State Farm, brings this action to redress alleged constitutional deprivations by the Institutional Classification Committee (ICC) in a hearing to review his security classification. Plaintiff seeks injunctive and compensatory relief. Jurisdiction is attained by virtue of 42 U.S.C. § 1983, 28 U.S.C. § 1343.

The relevant facts are as follows: On April 5, 1973, plaintiff was found in possession of a substance believed to be marijuana. He was thereafter placed in the County Jail section of the State Farm pending an investigation by the Virginia State Police and institution of possible criminal charges. Plaintiff was also referred to the ICC for possible action increasing his security status within the prison. On April 12, 1973, a classification hearing was held by the ICC, at which time it was decided that plaintiff be placed in maximum security. On August 14, 1973, an ICC hearing was held at which time plaintiff's security status

was reviewed and it was determined that he should be kept in maximum security. His security status was set for another review in 120 days, as is standard practice. It is the August 14, 1973 action which is the subject of attack in this proceeding.

 Initially, it should be noted that, on the basis of prison records submitted to the Court by the defendants, it would appear that plaintiff was originally placed in maximum security in April 1973, solely on the basis of the pending criminal investigation of plaintiff's suspected possession of marijuana and the potentiality of a criminal prosecution resulting from that charge. Previous decisions by this Court make clear that, where there is reason to suspect that an inmate has engaged in criminal conduct, a temporary change in security status pending a disposition of the criminal matter is justified on that basis alone. See, *e. g.*, Wilson v. Oliver, C.A. No. 24–73–R (Feb. 28, 1973), and Armstrong v. Oliver, C.A. No. 279–73–R (July 5, 1973). Under such circumstances, ac-

tion may be taken by the ICC without the necessity of the usual adversary hearing aimed at deciding the ultimate factual issues. It is sufficient that the ICC determine, on the basis of investigative reports submitted, that probable cause exists to suspect the inmate of criminal misconduct.[1]

 However, a temporary security reclassification based on the pendency of criminal charges against the inmate in question must be only for the period until such charges are finally disposed of.[2] Of course, a long range increase in the inmate's security classification may be given consideration subsequent to the disposition of the criminal matter, either on the basis of a determination of guilt in the criminal proceedings or on the basis of an independent ICC inquiry into the factual issues, coupled with a consideration of whatever other factors are committed to ICC discretion.[3]

 Alternatively, a long range increase in an inmate's security classification may be the subject of ICC consideration, even during the pendency of crim-

1. The lack of procedure with respect to such action is justified by the exigencies of the situation. There would be serious problems in attempting to resolve the factual issues in an ICC hearing prior to the disposition of any criminal action to be taken against the inmate. Any attempt to enlist the inmate's participation in such a hearing might well be considered an infringement on his constitutional right against self-incrimination with respect to the criminal charges. Nevertheless, the need to maintain prison security requires that penal authorities be empowered to take prompt action with respect to inmates whose conduct demonstrates a potential problem with respect to their then security classification. On the other hand, the consequences of a change in security status are not great, as the relative loss of liberty involved is only slight and there is no loss of "good time" as a result of such action.

2. Of course, the period of temporary reclassification during the pendency of the criminal action must not be excessive. The Court does not consider the fact that plaintiff here had still not been tried on the criminal charges by the date of his August 14, 1973 hearing, four months after the matter had originally arisen, to represent excessive delay under the facts of this case. The

records submitted show that plaintiff's criminal trial had originally been set for June 27, 1973. However, plaintiff's own inability to proceed at that time, because of a physical condition suspected to be the result of drugs, caused his case to be continued on that date.

3. There are no double jeopardy problems involved in an ICC reclassification action based on the same conduct involved in a criminal prosecution, since ICC proceedings involve intra-prison security determinations and are not penal in nature. See Odom v. Young, C.A.. No. 73–341–R (E.D.Va. Sept. 4, 1973).

An independent ICC inquiry into the factual issues may be justified on the grounds that the quantum of proof required to support an ICC action would be considerably less than required under the "reasonable doubt" standard of guilt applicable to a criminal proceeding.

An ICC hearing would probably still be required to consider a long range increase in security status for an inmate who has previously been convicted of criminal misconduct while in prison, in order that the ICC might consider the factors, in addition to the inmate's guilt or innocence, which are committed to its discretion.

inal action against the inmate, provided that any decision to take such action is based on grounds independent of the criminal charges which are pending.

In the instant case, the August 14, 1973 action continuing plaintiff's maximum security classification was taken while the criminal action against plaintiff was still pending. However, that decision to continue plaintiff's maximum security classification was potentially operative beyond the disposition of the criminal action and cannot, therefore, be considered merely a temporary expedient of the nature previously discussed. Accordingly, to the extent that it extends beyond the disposition of criminal charges against the plaintiff, the ICC action involved must be measured against the standards applicable to a usual ICC determination, absent the extenuating circumstances of suspected criminal conduct.

The gravamen of plaintiff's complaint is a challenge to the procedures used by the ICC with respect to the August 14, 1973 action continuing his maximum security status. More specifically, the plaintiff complains of the following:

1. The procedures employed with respect to that action were not in keeping with the institution's own published rules and regulations; and

2. Plaintiff's main adverse witness, Officer L. R. Clawson, was allowed to speak freely at the hearing, and controvert anything plaintiff offered in his own behalf.

With respect to plaintiff's first complaint, there is nothing in the record from which the Court can determine whether or not the ICC complied with its own stated procedures in its review of plaintiff's security classification. Neither party has submitted a copy of the regulations setting out those procedures. Regardless, it is not necessary for the Court to inquire further into this matter. This Court has jurisdiction to consider only prisoners' constitutional claims. Ferrell v. Huffman, 350 F.Supp. 164 (E.D.Va.1972). Absent a showing of invidious discrimination, penal authorities' failure to comply with their own regulations constitutes, at most, a violation of state law, but does not state a constitutional claim.

The question before the Court, involving as it does an ICC action, is whether minimum due process standards applicable in a non-criminal proceeding have been met. See Wesson v. Moore, 365 F. Supp. 1262, at p. 1267 mem. decis. Oct. 25, 1973.

In this case, as evidenced by plaintiff's own statements, he was given an opportunity to appear before the ICC and testify personally in an informal hearing to determine whether his maximum security status should be continued. The Court does not consider the apparent informality with which the hearing was conducted [4] to be violative of plaintiff's due process rights, particularly considering the non-punitive nature of the determination to be made.[5] Nor does the Court consider the fact that plaintiff's main adverse witness, Officer Clawson,[6] was allowed to comment freely on plaintiff's statements at this hearing to be out of tune with plaintiff's due process rights. Plaintiff has not denied defendants' contention that he, the plain-

4. According to plaintiff's account, it would appear that the hearing consisted basically of an informal proceeding in which the plaintiff, the members of the ICC considering plaintiff's case, and the witness, Clawson, sat around a table and discussed matters related to plaintiff's behavior in the prison. Much of the discussion apparently took the form of questioning put to the plaintiff by members of the ICC.

5. While the nature of the ICC function within the prison system necessarily contemplates some fact finding, the Court does not consider the consequences of an ICC security determination to be so momentus as to require elaborate procedural safeguards, such as are employed in a criminal trial, with respect to that fact finding mission.

6. It should be noted that Officer Clawson was merely a witness and not a functioning member of the ICC considering plaintiff's case.

tiff, was permitted to question Officer Clawson freely on any statements made by the latter. *Cf.* Wesson v. Moore, *supra,* 365 F.Supp. 1262, at p. 1267–1268 mem. decis. Oct. 25, 1973. (Right to confront and cross-examine witness).

■ Nevertheless, the Court takes note of the fact that plaintiff was not given advance notice of the hearing to be held.[7] The Court considers such notice to be of great importance, in order that an inmate facing a possible security reclassification might prepare to present "his side of the story" concerning matters that are likely to be discussed.[8] Braxton v. Carlson, 483 F.2d 933 (3d Cir. 1973). Therefore, the Court concludes that plaintiff has been denied procedural due process in this respect.[9]

■ In addition, the prison records which the defendants have submitted to the Court clearly reflect that one of the reasons for continuing plaintiff's maximum security status was the fact that criminal charges were still pending against him. However, there had been no factual inquiry by the ICC or any other impartial tribunal, at the time of plaintiff's August 14, 1973 reclassification hearing, as to the truth or falsity of those charges. Therefore, it was constitutional error for the ICC to consider that matter in rendering a decision, the operative effect of which would possibly extend beyond the time when the criminal charges would finally be disposed of.[10]

Accordingly, it is the conclusion of the Court that the decision by the ICC to continue plaintiff's maximum security classification is void to the extent that it would operate beyond the disposition of the criminal charges which were then pending against the plaintiff. On the other hand, the decision remains valid to the extent that it covers the period until plaintiff's criminal prosecution is disposed of. As has already been pointed out, a full-fledged evidentiary hearing is not a prerequisite to such action. Likewise, the Court considers that advance notice of the contemplated action should not be required with respect to a proceedings where only this type of temporary reclassification is involved.

For the reasons stated, defendants' motion for summary judgment will be granted in part, and a partial judgment will be entered thereon. It appearing further that there are no issues of fact with respect to the remaining questions regarding plaintiff's request for injunctive relief, a partial judgment will also be entered for the plaintiff.

■ Finally, the Court does not consider the question of damages an appropriate consideration at this juncture, as plaintiff has not shown that he has been prejudiced by the erroneous portion of

---

7. Plaintiff's summary of the procedures employed so indicates and defendants have not denied this fact. Nor do the prison records which defendants have submitted indicate the contrary.

8. Such notice would be expected to give some indication as to the stimulus or stimuli which have prompted action to consider increasing the plaintiff's security status and a general indication as to any adverse reports contained in the inmate's records which are likely to be considered by the Committee in reaching its decision. See Braxton v. Carlson, 483 F.2d 933, at 942 (3d Cir. 1973).

9. As noted previously, the Court views this case in the posture of a situation involving the initial determination of whether an inmate's long range security classification should be increased. Accordingly, the Court intends no intimation as to the procedural safeguards that should attach to a periodic review of cases involving inmates who are already in a high security classification, with a view toward possibly lowering that classification.

10. See discussion above, concerning the limitations on a temporary reclassification based on the pendency of criminal charges against an inmate.
It may be that in plaintiff's case there was sufficient justification for action by the ICC increasing his security status, even absent the factor of a pending criminal prosecution. Nevertheless, it was inappropriate for the ICC to even consider the pending criminal action in reaching their decision here, and the fact that they did has tainted that determination so as to render it void.

the ICC determination in question. A prerequisite to this Court's even considering the damages issue would be a showing by the plaintiff that he was, in fact, held in maximum security beyond the disposition of the criminal charges against him. If this is the case the plaintiff shall so inform the Court within fifteen (15) days of this date. Otherwise, his claim for damages will stand dismissed.

An appropriate order shall issue.