Charles L. KIRBY et al.,
Plaintiffs-Appellants,

v.

Stanley BLACKLEDGE, Warden of Central Prison, and V. Lee Bounds, Commissioner of the North Carolina Department of Corrections, Defendants-Appellees.

No. 73–2236.

United States Court of Appeals,
Fourth Circuit.

Argued May 6, 1975.

Decided Jan. 19, 1976.

James V. Rowan, Durham, N. C. (Paul, Keenan & Rowan, Durham, N. C., Norman B. Smith, Smith, Carrington, Patterson, Follin & Curtis, Greensboro, N. C., on brief), for plaintiffs-appellants.

Jacob L. Safron, Asst. Atty. Gen. of N. C., Raleigh, N. C. (Jacob L. Safron, Asst. Atty. Gen. of N. C., Raleigh, N. C., on brief), for defendants-appellees.

Before CLARK, Supreme Court Justice *, HAYNSWORTH, Chief Judge, and FIELD, Circuit Judge.

Mr. Justice CLARK:

While federal courts are most reluctant to interfere in the administration of state or federal prison systems, it becomes necessary to do so where constitutionally secured rights of prisoners are abridged by prison officials without compelling justification. We have such a case here.

This § 1983 action was brought by prisoners incarcerated in the maximum security section of North Carolina Central Prison at Raleigh—known as I & J cell blocks. In the complaint, it is alleged that the informal hearing procedures used to assign prisoners to these units violate the Due Process Clause of the 14th Amendment; and it is further asserted that the conduct of prison officials in the operation of the cell blocks violates the Cruel and Unusual Punishment Clause of the 8th Amendment. North Carolina prison officials, instead of asserting a compelling justification

* Associate Justice Tom C. Clark, United States Supreme Court, Retired, sitting by designation.

for these deprivations, filed a motion for summary judgment of dismissal on affidavits, which was sustained by the district court. We think that the case was prematurely dismissed since numerous genuine issues of material fact exist under the pleadings and affidavits. We therefore reverse the judgment and remand the case for further proceedings.

## I.

The Attorney General of North Carolina states in his brief on behalf of the prison officials that the "I and J" cell blocks, each housing 17 inmates, constitute the maximum security cell blocks for the entire Division of Prisons of the North Carolina Department of Corrections. The Division of Prisons has approximately 12,000 inmates, and the 34 assigned to the I and J blocks are for the most part, bitter, incorrigible and violent prisoners. Assignments to these cell blocks are made by a committee of prison employees appointed by the Warden of Central Prison and only those prisoners are assigned who require the greatest degree of control and custody available, not only for their own protection but also the protection of other prisoners. However, no inmate may be kept in the I and J cell blocks longer than 15 days without the concurrence of the Central Classification Board (CCB). The Director of the Diagnostic and Classification Service supervises, sets the criteria, and assigns the members of the CCB from the employees of the Department of Corrections at Central Prison. No inmate may be classified by the CCB for indefinite non-punitive segregation without a quorum of five being present with at least three representatives of Diagnostic and Classification Service, including the Chairman or Vice-Chairman. To be so classified, an inmate must have attacked another inmate with a deadly weapon, committed aggravated assault, or have behaved in a manner creating a clear and present danger to others or to himself from others. Whenever possible, the official recommending indefinite non-punitive segregation meets with the Board at an informal hearing. The inmate is brought before the Board, is informed of the recommendation and the reasons therefor. The inmate is permitted to question the complaining officer and the Board members and is permitted to refute the information adduced. After full discussion the inmate and the complaining officer leave the hearing room and the Board arrives at its decision. The inmate and complaining officer are then returned and the inmate is informed of the decision. In the absence of the complaining officer, the hearing proceeds on his written statement. A review of all I and J cell classifications is held every six months, at which time the inmate is seen by the Board, and a written progress report from the staff is made available to the Board.

This procedure is quite similar to that struck down by the Supreme Court in *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). There the Court held that "advance written notice of the claimed violation and a written statement of the factfindings as to the evidence relied upon and the reasons for the disciplinary action taken" are required to meet the minimum standards of due process. At 563, 94 S.Ct. at 2978. As in *Wolff,* there "is no indication [in the record] that the inmate is ever given a written statement by the Committee as to the evidence or informed in writing or otherwise as to the reasons for the disciplinary action." Id. at 564, 94 S.Ct. at 2978. In addition no advance written notice of the charges is given inmates here. This alone requires reversal.

But this due process infraction is not all that is present here. In Allegation 4 of their complaint, appellants claim that a high pressure hose is used on prisoners. Two instances are cited involving David Leonard and Wayne Jenkins, inmates of the I and J cell blocks. The hose was turned on Jenkins for an hour; Leonard suffered it for twenty minutes because he would not give a radio to a guard. Prison officials do not deny these specific instances and, further, admit that "on special occasions they [hoses] are used to quell disturbances if all other means available after use are inadequate." Moreover, Allegation 6 asserts that only two hours' recre-

ation is allowed an inmate of I and J cell blocks each week. The prison officials say that "the recreation schedule" calls for one hour each day with the average being "four per week for each inmate." Allegation 8 states that prisoners are allowed only one shave every three days and that all of the prisoners (31 at the time of the affidavit) must use the same razor. The prison officials say that inmates shave three times a week and that "several" use the same blade. Allegation 9 has to do with inadequate medical treatment. One example cited is David Parker, a psychotic inmate, "who torments his fellow prisoners with shouts and screams and the stench of his excrement." Four other prisoners swear that they were unable to see a doctor, though seriously ill. The prison officials answer that the medical staff makes daily rounds and talks to each inmate. As for Parker, the prison officials say that he was sent to a hospital. But no explanation is given as to why Parker, a psychotic, was found guilty of such disciplinary infractions that would warrant placing him in I and J cell blocks, in indefinite non-punitive segregation with 30 incorrigibles, as alleged by the appellants and not denied by the officials. Allegation 10 complains of the inadequacy of the visiting facilities which consist of an unheated converted toilet. Two guards are present at all times, and the prisoner is handcuffed. In Allegation 14, the appellants allege that they have no access to the prison library. This, too, is undenied, although it is claimed that books are furnished the inmates in their cells. This seems to be contra to the holding of the Seventh Circuit in *Knell v. Bensinger,* 489 F.2d 1014 (1973) where a summary judgment approving a denial of access to the prison library while a prisoner was in isolation was reversed. Indeed, the lack of adequate legal references in a prison library has been held to be a denial of access to the courts. *Cruz v. Hauck,* 475 F.2d 475 (5th Cir. 1973); *Corby v. Conboy,* 457 F.2d 251 (2d Cir. 1972); *Gilmore v. Lynch,* 319 F.Supp. 105 (N.D.Cal.1970). This is not to say that prisoners put into segregated detention ought to have an unrestricted right of access to library facilities. Absolute denial, however, is impermissible. There is no showing here as to the content of the library.

## II.

The first ten allegations as to the deprivation of constitutional rights were each denied by the District Court because they had "been presented to this Court in previous complaints and have been dismissed," citing several memorandum decisions of this court. This was error, of course, because the memorandum decisions of this circuit are not to be treated "as precedent within the meaning of the rule of stare decisis." *Jones v. Superintendent,* 465 F.2d 1091 (4th Cir. 1972), at 1094. Moreover, in civil rights cases the use of precedents as to prison conditions is suspect.

## III.

The prisoners' allegation Number 1 is so bizarre that it is difficult to believe that such a situation could exist in our society; it is reminiscent of the Black Hole of Calcutta. The allegation is that there is a strip or "Chinese cell" where prisoners are occasionally placed in which there is no bedding, no light, and no toilet facilities, save a hole in the floor. The prison officials do not deny this, and it would appear that no genuine issue exists as to it, other than the argument that it is cruel and unusual. The District Court, however, found that the prisoners had no standing to challenge the use of the cell since there was no allegation that a party to the suit had been incarcerated there. Nevertheless, two inmates swore in their respective affidavits that they had been confined there, one for 3 months and the other on a charge of assault upon which he had been found not guilty.

Allegation 11 has to do with the harassment and intimidation of the prisoners by the guards. The District Court dismissed it as a conclusion of the pleader. However, a prisoner named Kirby alleges that he was threatened with imprisonment in the Chinese cell if he did not mend his ways. Of the remaining

allegations, Allegation 12 has to do with the poor air circulation in the I and J cell blocks resulting in cold floors and hot ceilings causing intolerable summertime conditions. The prison officials answer that the windows are open and there is one exhaust fan. The final allegation (15) states that the cells are covered with filth, and with rats, roaches, and vermin in abundance. The prison officials reply that inmates are furnished with materials to clean their own cells as well as disinfect them.

■ The combination of conditions alleged by the prisoners and which, for the purposes of this decision, we must take as true, have the cumulative effect of being cruel and unusual punishment as well as deprivation of due process. Many of the circumstances taken alone reach the level of cruel and unusual punishment, such as the Chinese cell, inadequate exercise and medical treatment, inadequate heating and ventilation, and lack of access to the prison library. However, all of the allegations of the prisoners are matters to be considered and determined after a full trial. In this connection, it might be well on remand if the allegations of deprivation and due process are restated and brought up to date and the class action aspect of the case be given attention so that full relief may not be frustrated.

## IV.

■ The informal hearing procedure presently used to assign inmates to cell blocks I and J does not meet the requirements of *Wolff v. McDonnell, supra.* Here, as there, the inmate assigned to cell blocks I and J loses his "good time" credit. As Mr. Justice White points out in *Wolff, Preiser v. Rodriguez,* 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), requires that to obtain restoration of "good time" credits a prisoner must seek habeas corpus rather than § 1983 relief. But he is also careful to note that *Preiser* would not "preclude a litigant with standing from obtaining by way of ancillary relief an otherwise proper injunction enjoining the prospective enforcement of invalid prison regulations." *Id.* at 555, 94 S.Ct. at 2974. In addition, *Wolff* sug-

gests that in the case of illiterate or otherwise disadvantaged inmates, for whom the complexity of the issues may foreclose the needed capacity to collect and present the evidence necessary for an adequate comprehension of the case, the Board should allow the assistance of a fellow inmate, or some designated staff member, to be part of the proceedings; such assistance will insure that the right of confrontation is afforded.

This is not to say that an inmate of a penal institution is entitled to the full panoply of rights of a person not so incarcerated, but prisoners are not "wholly without the protections of the Constitution and the Due Process Clause," *Wolff v. McDonnell, supra,* 418 U.S. at 555, 94 S.Ct. at 2974; "his rights may be diminished by the needs and exigencies of the institutional environment . . . [but] [t]here is no iron curtain drawn between the Constitution and the prisons of this country." *Id.* at 555–556, 94 S.Ct. at 2974. In short "there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application." *Id.* at 556, 94 S.Ct. at 2975. As this Circuit has clearly pointed out in *Breeden v. Jackson,* 457 F.2d 578, 580 (1972):

"Under the guise of protecting constitutional rights, however, federal courts do not have the power to, and must be careful not to, usurp the responsibility that rests with the executive branch for the management of prisons. It is only when the deprivations of prison confinement impose conditions of such onerous burdens as to be of constitutional dimensions that courts may intervene in prison management."

■ The entry of the summary judgment here was clearly erroneous since genuine issues of material fact remained in dispute. See 10 Wright and Miller, *Federal Practice and Procedure* at 614 (1972); *Associated Press v. United States,* 326 U.S. 1, 65 S.Ct. 1416, 89 L.Ed. 2013 (1945); *United States v. Diebold,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Poller v. Columbia Broadcasting System,* 368 U.S. 464, 473, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962); *Adickes*

*v. S. H. Kress Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Indeed, civil rights claims present special circumstances on summary judgment. *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). Cf. *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

Moreover, petitioners were entitled to pursue their discovery procedures, which summary judgment prevented, to more thoroughly canvas the due process violations which were alleged and decried. They were entitled to the opportunity to perfect their class action, but see *Board of School Commissioners v. Jacobs,* 420 U.S. 128, 95 S.Ct. 848, 43 L.Ed.2d 74 (1975), and to bring on the proof that the combination of conditions and circumstances alleged really amounted to cruel and unusual punishment of appellants. This they may do on remand to the end that the trial court will be fully informed as to the matter. Accordingly, whatever deprivations there are that reach constitutional dimensions shall be critically reviewed and terminated. *Breeden v. Jackson,* 457 F.2d 578, 580 (1972).

It is so ordered.