540 F.2d 670
 Donald BENFIELD, Appellant,
v.
Vernon BOUNDS, etc., et al., Appellees.
Robert E. X. CARROLL, Appellant,
v.
David L. JONES, etc., et al., Appellees.
William Floyd JOHNSON, Jr., Appellant,
v.
V. L. BOUNDS, etc., et al., Appellees.
Leroi DENSON, Appellant,
v.
DEPARTMENT OF CORRECTIONS, etc., Appellee.
 Nos. 73-2159, 75-1069, 75-1867 and 75-1868.
 United States Court of Appeals,
Fourth Circuit.
 Argued Dec. 1, 1975.
Decided March 31, 1976.
 
 1
 Deborah G. Mailman, Raleigh, N. C., Court-Appointed Counsel for appellants in Nos. 75-1867, 75-1069 and 75-1868 (Jack Greenberg and Stanley A. Bass, New York City, on brief for Appellant in No. 73-2159).
 
 
 2
 Jacob L. Safron, Special Deputy Atty. Gen. of North Carolina, Raleigh, N. C., and (Rufus L. Edmisten, Atty. Gen. of North Carolina, Raleigh, N. C., on brief) for appellees in Nos. 73-2159, 75-1069 and 75-1867.
 
 
 3
 Burnett Miller, III, Asst. Atty. Gen. of Virginia, Richmond, Va., and (Andrew P. Miller, Atty. Gen. of Virginia, Richmond, Va., on brief), for appellee in No. 75-1868.
 
 
 4
 Before HAYNSWORTH, Chief Judge, CRAVEN, Circuit Judge, and KAUFMAN,* District Judge.
 
 FRANK A. KAUFMAN, District Judge:
 
 5
 In these four cases each of the plaintiffs, three of them confined in North Carolina correctional institutions and one, Denson, in such a Virginia institution, appeal from denial of relief sought in connection with transfers and/or reclassifications. Each of them, proceeding pro se, has alleged that his intra-confinement system transfers and/or reclassifications occurred without his being afforded that degree of procedural due process required by Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).[1] In Kirby v. Blackledge, 530 F.2d 583 (4th Cir. 1976), this Court has recently held that the requirements of Wolff relating to intra-prison disciplinary proceedings are applicable with regard to intra-prison reclassifications. In Kirby, the actions complained of by the inmates allegedly resulted in each of them being subjected to conditions of confinement less favorable to them.[2]
 
 
 6
 The Supreme Court's disposition of Wolff took place on June 26, 1974. In Wolff (418 U.S. at 573-74, 94 S.Ct. 2963), Mr. Justice White made clear that the Court's decision in Wolff was not to be accorded retroactive effect. In Cox v. Cook, 420 U.S. 734, 95 S.Ct. 1237, 43 L.Ed.2d 587 (1975), the Supreme Court again made that crystal clear as we have recognized in Williams v. Bounds, No. 75-2380, 532 F.2d 753 (4th Cir. 1976), Russell v. Division of Corrections, 530 F.2d 969 (4th Cir. 1975), and Perry v. Bordenkircher, 529 F.2d 516 (4th Cir. 1975.).
 
 
 7
 All four plaintiffs are in confinement at this time. While none of them is now confined in the same location to which he was transferred or reclassified, each of them seemingly contends that the transfer and/or reclassification of which he complains continues on his record and either presently or in the future may adversely affect him within the confinement system in which he is an inmate. Accordingly, even if damage claims are not involved,[3] none of the within four cases would appear moot, particularly in the absence of any notation, among plaintiffs' institutional records, of the type referred to in Preiser v. Newkirk, 422 U.S. 395, 402, 95 S.Ct. 2330, 2334, 45 L.Ed.2d 272 (1975), indicating that one or more of their transfers " 'should have no bearing in any future determinations made by the Board of Parole or the time allowance committee.' "
 
 BENFIELD
 
 8
 Benfield's complaints relate to his transfers within the North Carolina prison system in June 1971, between November 1971 and March 1972, between March 1972 and June 1972, between August 1972 and January 1973, and in June 1973. Benfield seeks injunctive and declaratory relief, but not damages.
 
 
 9
 The record in Benfield includes responses by defendants and a number of affidavits which, together with Judge Dalton's careful factual exploration as set forth in his opinion in the court below, establish that in June 1971 defendants were in receipt of what they described as "reliable information . . . from outside sources" that Benfield, whose record reveals seven felonies and four escapes, had arranged, for purposes of escape, to have two pistols smuggled into the confinement institution then housing him. One loaded automatic was found within the prison walls. Thereafter, Benfield and a second inmate were transferred to another institution. Although no charges were preferred against him, Benfield was subsequently orally informed in July 1971 at an appearance before a classification board of the reason for his transfer. Benfield denied any involvement with the gun matter, both then and in November 1971 when he once again appeared before a classification board.
 
 
 10
 In March 1972, after a pipe wrench had been found at the institution at which Benfield was then confined, and after an inmate had given information that both a wrench and an automatic pistol had been smuggled in, an investigation was undertaken by the institution's officials. The pistol was not found. Benfield volunteered to take a lie detector test but that test was not administered, at first because Benfield was on certain prescribed medication. However, although the medication was discontinued for a five-day period, the test was not administered during those five days. Thereafter, the medication was resumed and the test was not given. Judge Dalton has noted: "Defendants have not indicated why the test was not administered to the plaintiff." Seemingly, the test could have been given to Benfield during the five-day period.
 
 
 11
 Benfield also submitted to a classification board sworn affidavits of two inmates that another inmate was overheard by them, in a conversation with a custodial officer, to admit that that latter inmate had falsely charged Benfield in connection with the March 1972 pistol episode. Also, Benfield again denied involvement in that matter when he appeared before a classification board in June 1972. That board, however, decided to keep Benfield in the medium custody arrangements then pertaining to him. In August 1972, after the institution then housing Benfield changed its medium custody policies, Benfield, after another appearance before a classification board, was determined in need of more supervision than would have been available in medium custody after the change in policy and was transferred to close custody.
 
 
 12
 Each time Benfield appeared before a classification board, he was apparently informed of the reasons for his appearance and afforded the opportunity to present his side of the matter, but was not given notice and hearing of the type mandated by Wolff. In June 1973, the classification board assigned Benfield to medium custody in another institution, noting "his good adjustment" but concluding that because of "his history of escapes and the previous 2 incidents", i. e., the two weapon smuggling matters referred to supra, "it was the feeling of the Board that Benfield was in need of a very structured situation."
 
 
 13
 All of the actions of which Benfield complains took place before June 26, 1974. Thus Wolff does not control as to them. Nor does Judge Dalton's grant of defendants' motion for summary judgment offend pre-Wolff standards in the context of the facts of this case. As Wolff and Kirby recognize, an inmate should be afforded a relatively high degree of procedural due process before he is reclassified and placed in more restrictive custody because of alleged actions on his part, in order to enable him to present fully his side of the factual and legal issues. In Benfield's case, it would have been preferable if Wolff standards had been effective in 1971, 1972 and 1973 and had enabled Benfield to have had the opportunity to proceed within the bounds of such process. But the overwhelming burden which would be imposed on prison officials if they were required presently to reexamine past reclassifications and transfers, such as those involving Benfield, of all inmates now in custody demonstrates the wisdom of the Supreme Court's determination not to make Wolff's application retroactive. That is not to say that pre-Wolff standards require reviewing courts to refuse relief in cases in which reclassification and/or transfer resulted from egregiously discriminatory or arbitrary conduct on the part of prison officials.[4] But the treatment accorded to Benfield in no way approaches that level. Accordingly, the grant of summary judgment by the district court is hereby affirmed in Benfield's case.
 
 JOHNSON
 
 14
 Johnson, complaining of a June 1973 transfer which allegedly occurred without his being informed of any reason for the same, seeks declaratory and injunctive relief and also damages. The district court dismissed the complaint without requiring a response. The facts which can be gleaned from Johnson's complaint are very sparse. While pre-Wolff standards are hardly well defined, they would appear to require, at the very least, a response by the defendants containing sufficient information to establish that the action complained of by the inmate was not so egregiously unfair as to require relief. Accordingly, the Johnson case is hereby remanded for further proceedings below.
 
 CARROLL
 
 15
 Carroll, asking for declaratory and injunctive relief and damages, complains of transfers in October and December 1974, as well as other alleged denials of constitutional rights. The district court dismissed the complaint without requiring any response from defendants. Wolff and Kirby are both applicable in this case. In this Court's view, the standards established by those two cases require that a prison inmate subject to reclassification or transfer which took place after June 26, 1974, and which imposed a "major change in the conditions of confinement" of the inmate,[5] be afforded the hearing rights prescribed by Wolff. In this case it is not clear whether Carroll's transfer from one medium custody institution to another medium custody institution resulted in a major change in the conditions of his confinement. Certain facts alleged by Carroll do appear to indicate that Carroll's transfers may have been administrative rather than punitive. However, even if the transfers were administrative, they should not, in this Court's opinion, be exempted from the "major change" approach. While some courts have indicated that Wolff may be applicable only to punitive transfers,[6] other courts have concluded that it is often difficult factually to determine if a particular transfer is punitive or administrative. Additionally, they have indicated that Wolff standards should be applied if the transfer, whether it be punitive or administrative, may subject the inmate to potentially materially adverse effects.[7] That latter approach would appear preferable and is adopted by this Court. In this case, it requires a remand so that the district court can in turn require the defendants to respond to Carroll's allegations. Upon remand and after defendants do so further respond, the district court may itself determine whether it desires to await the decision of the Supreme Court in United States ex rel. Haymes v. Montanye,505 F.2d 977 (2d Cir. 1974), cert. granted, 422 U.S. 1055, 95 S.Ct. 2676, 45 L.Ed.2d 707, 43 U.S.L.W. 3681 (June 30, 1975), and Fano v. Meachum,520 F.2d 374 (1st Cir. 1975), cert. granted, 423 U.S. 1013, 96 S.Ct. 444, 46 L.Ed.2d 384, 44 U.S.L.W. 3339 (December 8, 1975). Those two cases are presently calendared by the Supreme Court for argument in tandem. The question presented to the Supreme Court in the petition for certiorari in United States ex rel. Haymes v. Montanye is:
 
 
 16
 Whether a prison inmate who is transferred within a state from one maximum security institution to another maximum security institution, without the imposition of disciplinary punishment, is entitled under the Due Process Clause of the Fourteenth Amendment to notice of the reasons for the transfer and an opportunity to be heard?
 
 
 17
 The questions presented in the petition for certiorari in Fano v. Meachum are:
 
 
 18
 1. Whether a prison inmate who is transferred, within a state, from a medium security institution to a maximum security institution, when there is no imposition of disciplinary punishment at the receiving institution, is entitled under the Due Process Clause of the Fourteenth Amendment to more than a notice of the proposed transfer and an opportunity to be heard in opposition to the transfer?
 
 
 19
 2. Whether the Commonwealth of Massachusetts has sufficiently created an interest in remaining in any one prison to be cognizable as "liberty" or "property" under the Fourteenth Amendment?
 
 
 20
 3. Whether the Due Process Clause of the Fourteenth Amendment requires disclosure of informant information when, in the judgment of prison officials, such disclosure would create a substantial likelihood of harm to the informants?
 
 
 21
 4. Whether the opinion of the Court of Appeals for the First Circuit is consistent with opinions of this Court?
 
 DENSON
 
 22
 Denson, complaining of a reclassification within the same Virginia confinement institution, apparently seeks only equitable relief. Seemingly also, that reclassification occurred no earlier than during October 1974. Denson's pro se complaint reveals that he may have been given a hearing in connection with a disciplinary charge and found after such hearing to have committed an infraction of prison rules. However, Denson alleges he was not given another hearing prior to his reclassification. Judge Merhige, in the court below, dismissed Denson's complaint without calling for a response by defendants.
 
 
 23
 In Landman v. Royster, 333 F.Supp. 621 (E.D.Va.1971), Judge Merhige, well in advance of Wolff, required procedural due process in a prison disciplinary setting. In Cousins v. Oliver, 369 F.Supp. 553 (E.D.Va.1974), Judge Merhige held that even though the prisoner-plaintiff had been afforded an appropriate hearing by an institutional adjustment committee and had been found to have violated prison regulations, nevertheless the prisoner was subsequently entitled, absent good reasons to the contrary, to a further classification hearing before a transfer to more restricted conditions of custody. Without reaching the issue decided by Judge Merhige in the Cousins case, this Court, in this case, in which post-Wolff standards prevail, hereby remands to the district court so that that court may reconsider the Wolff-type issue after defendants have been required to respond to Denson's rather unclear complaint.[8] Denson also asserts a double jeopardy claim, based on the fact that he was allegedly reclassified for the same incident for which he had been previously disciplined prior to his reclassification. That contention is without merit and need not be further considered by the district court upon remand.[9]
 
 
 24
 The judgment of the court below in Benfield is affirmed. The Johnson, Carroll and Denson cases are remanded for further proceedings in accordance with this opinion.
 
 
 25
 BENFIELD AFFIRMED; JOHNSON, CARROLL, AND DENSON REMANDED WITH INSTRUCTIONS.
 
 
 
 *
 Sitting by Designation
 
 
 [1]
 While certain other claims have been made by plaintiffs Benfield, Carroll and Denson, they do not appear to state meritorious grounds for relief. The denial of those claims by the court below is therefore hereby affirmed in Benfield. In Carroll upon remand, those claims should however be further examined by the court below and ruled upon expressly. In Denson, plaintiff's double jeopardy claim is referred to infra in the body of this opinion
 
 
 [2]
 See Wolff v. McDonnell, supra, 418 U.S. at 571-72 n.19, 94 S.Ct. 2963. Whether the "rationale of Wolff " applies to initial classifications is an issue noted but not decided in Williams v. Bounds, No. 75-2380, 532 F.2d 753 (4th Cir. January 2, 1976). The record in Kirby discloses that it involved reclassifications, not initial classifications
 
 
 [3]
 See Powell v. McCormack, 395 U.S. 486, 495-97, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969); Burke v. Levi, 530 F.2d 967 (4th Cir. 1975)
 
 
 [4]
 "Classification of inmates is a matter of prison administration and management with which federal courts are reluctant to interfere except in extreme circumstances." Williams v. Bounds, supra, 532 F.2d 753 (4th Cir. 1976). That comment was written in the context of pre-Wolff law
 
 
 [5]
 Wolff v. McDonnell, supra, 418 U.S. at 571-72 n.19, 94 S.Ct. at 2982
 
 
 [6]
 See Aikens v. Lash, 514 F.2d 55, 58-59 (7th Cir. 1975); Stone v. Egeler, 506 F.2d 287 (6th Cir. 1974); United States ex rel. Haymes v. Montanye, 505 F.2d 977 (2d Cir. 1974), cert. granted, 422 U.S. 1055, 95 S.Ct. 2676, 45 L.Ed.2d 707, 43 U.S.L.W. 3681 (June 30, 1975)
 
 
 [7]
 See Lokey v. Richardson, 527 F.2d 949 (9th Cir. 1975); Carlo v. Gunter, 520 F.2d 1293, 1295 (1st Cir. 1975); Fano v. Meachum, 520 F.2d 374, 396 n.2 (1st Cir. 1975), cert. granted, 423 U.S. 1013, 96 S.Ct. 444, 46 L.Ed.2d 384, 44 U.S.L.W. 3339 (December 8, 1975); Gomes v. Travisono, 510 F.2d 537, 541 (1st Cir. 1975). Cf. Newkirk v. Butler, 499 F.2d 1214, 1217-18 (2d Cir. 1974), vacated on grounds of mootness, sub nom. Preiser v. New Kirk, 422 U.S. 395, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975). The First Circuit's comment in Carlo (at 1296) that "(n)or is it determinative that the transfer occurred within a single institution" is applicable in Denson
 
 
 [8]
 The district court may also, as suggested supra in the discussion re Carroll, desire, after defendants so respond, to await the Supreme Court's opinion in Montanye and Fano
 
 
 [9]
 See Cousins v. Oliver, supra at 556; Almanza v. Oliver, 368 F.Supp. 981, 984 n.3 (E.D.Va.1973). Cf. Fano v. Meachum, supra at 376 n.1 (no double jeopardy is involved where criminal prosecution follows disciplinary proceeding based on same conduct); Daigle v. Hall, 387 F.Supp. 652, 661-62 (D.Mass.1975) (same)