**Phillip Gray PATTERSON, Plaintiff,**

v.

**W. M. RIDDLE, Supt., et al.,
Defendants.**

**Civ. A. No. 75–0074–R.**

United States District Court,
E. D. Virginia,
Richmond Division.

Jan. 23, 1976.

Phillip Gray Patterson, pro se.

Patrick A. O'Hare, Asst. Atty. Gen., James W. Hopper, Richmond, Va., for defendants.

## MEMORANDUM

MERHIGE, District Judge.

Plaintiff, an inmate confined to the Virginia State Penitentiary, brings this action under 42 U.S.C. § 1983 complaining of the medical treatment he has received and the procedures under which plaintiff was placed in maximum security status. Defendants Riddle and Blankenship are the superintendents of the Virginia State Penitentiary and Bland Correctional Center, respectively, and Lieutenant Barlow is the officer in charge of the maximum security building of the Virginia State Penitentiary. Plaintiff seeks damages, release from maximum security confinement, and a guarantee that he will receive adequate medical treatment. Jurisdiction is conferred by 28 U.S.C. § 1343(4). The matter comes before the Court on defendants' motion for summary judgment and plaintiff's response thereto.

Plaintiff's claim regarding inadequate medical treatment will be considered first. Prisoners are entitled to reasonable medical care. *Blanks v. Cunningham*, 409 F.2d 220 (4th Cir. 1969); *Cole v. Williams*, 526 F.2d 588, No. 74–2266 (4th Cir. 1975). Plaintiff alleges that he was denied medication on three separate occasions during December 1974, and January 1975. Plaintiff further submits that for two months he unsuccessfully sought treatment for an injured shoulder and received inadequate treatment for various skin and leg ailments. Affidavits submitted by defendants describe the procedure used by the Virginia State Penitentiary in monitoring prisoner medical complaints but do not address themselves to the specifics of plaintiff's complaint. Absent evidence relating to the treatment of this particular inmate, the Court cannot dismiss the complaint.[1] *Cole v. Williams*, 526 F.2d 588, No. 74–2266 (4th Cir. 1975).

The Court recognizes the difficulty involved in responding to an allegation of inadequate medical treatment when the pro se complaint lacks the desired specificity. The plaintiff therefore will be directed to particularize this aspect of his complaint.

1. Disputes between physicians and prisoners as to the proper treatment are not actionable of § 1983. *Edwards v. Broughton*, 519 F.2d 1399, C.A. No. 75–1398 (4th Cir. 1975). It is only exceptional circumstances that give rise to a § 1983 claim for failure to provide adequate medical care.

The facts surrounding plaintiff's complaint relating to his being placed in maximum security are largely uncontested. On October 22, 1974, a fatal stabbing took place at the Bland Correctional Center. Plaintiff was among those inmates suspected and an investigation was instigated by the Virginia State Police. From October 23, 1974, until November 6, 1974, plaintiff was placed in isolation as a result of an unrelated institutional infraction. On November 4, 1974, an Institutional Classification Committee (ICC) hearing was held, and it was determined that due to his alleged involvement in the stabbing, plaintiff and three other suspected inmates should be segregated from the general prison population pending the outcome of the Virginia State Police investigation. Another ICC hearing was held December 6, 1974, which resulted in the recommendation that plaintiff be transferred to the Virginia State Penitentiary because it was the belief of the security personnel at the Bland Center that should plaintiff be released into the general inmate population, his personal safety, along with the security of the institution, would be threatened. Plaintiff was subsequently transferred to the State Penitentiary on December 9, 1974. Upon arrival at the Penitentiary, plaintiff was placed in the "B-basement" segregation area. On December 17, 1974, Penitentiary officials learned of plaintiff's alleged involvement in the fatal stabbing. Notice was given to plaintiff of an ICC hearing to be held December 20, 1974, to determine whether he should be confined to maximum security ("C-building"). The hearing resulted in reclassifying plaintiff's security status. Plaintiff was subsequently placed in C-building on December 23, 1974, subject to status review every 120 days. The Virginia State Police investigation into the stabbing was completed sometime around February 26, 1975. The investigation exonerated the other three suspected inmates who were subsequently released from segregation status. Patterson, however, was still implicated. The Commonwealth Attorney for Bland County concluded that there was insufficient evidence to warrant prosecution on a murder charge, but proposed to present to a grand jury in June evidence to indict plaintiff on a charge of possession of a weapon. On April 11, 1975, the ICC held a hearing where it recommended continued confinement in C-building for plaintiff until the Commonwealth disposed of the potential criminal action against plaintiff. Plaintiff was next before the ICC on August 9, 1975, where the Committee again recommended continued confinement in C-building as they understood that plaintiff was scheduled to stand trial on the charge in September which date was later changed to December. On October 31, 1975, the ICC again met, but this time decided to release plaintiff to the general population rather than await his trial.

Plaintiff does not contend that the ICC hearings themselves were conducted in violation of due process. Indeed, it appears that plaintiff was given timely notice prior to all hearings, counseling services were made available, and plaintiff was afforded an opportunity to participate in the hearings. See *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Landman v. Royster,* 333 F.Supp. 621 (E.D.Va.1971); *Ferrell v. Huffman,* 350 F.Supp. 164 (E.D.Va.1972). The essence of the complaint is that the plaintiff had been placed in a maximum security cell block for over ten (10) months based solely on suspicion of his involvement in criminal activity. He was never adjudged guilty of violating any institutional rules. Plaintiff's confinement in C-building was based entirely on the pending criminal action.

■ This Court has previously held that where there is reason to suspect that an inmate has engaged in criminal conduct, a temporary change in his security status pending disposition of the criminal matter is justified on this basis alone. *Armstrong v. Oliver,* C.A. No. 73–279–R (E.D.Va. July 5, 1973); *Wilson v. Oliver,* C.A. No. 73–24–R (E.D.Va. February 28, 1973). Such a temporary

change in security status must be only for a period until such charges are finally disposed of. *Almanza v. Oliver,* 368 F.Supp. 981 (E.D.Va.1973). Each and every ICC report relating to this incident states unequivocally that plaintiff was to remain in C-building pending disposition of the charges. Thus, there was certainly nothing arbitrary or capricious about confining the plaintiff in C-building through the completion of the Virginia State Police investigation in late February 1975. After that point, it became clear that the plaintiff was not going to be charged with murder. There remained, however, the possibility of criminal proceedings regarding possession of a weapon. It is this potential charge that purportedly justified the remainder of plaintiff's lock-up in maximum security.

██ In *Almanza,* this Court suggested to prison officials that "the period of temporary reclassification during the pendency of the criminal action must not be excessive." *Almanza v. Oliver,* 368 F.Supp. 981, 984 n. 2 (E.D.Va.1973). The Court in *Almanza* held that a four-month period of increased security status was not excessive. An important consideration in that decision was the fact that plaintiff himself contributed to the delay in bringing his case to trial. The present record, however, contains no explanation as to why Patterson had not been tried ten months after the alleged offense. In fact, there is no evidence that plaintiff was ever formally indicted on any charge. Given the deprivations associated with confinement in maximum security,[2] a ten-month confinement therein is of serious consequence to a prisoner. The severity of the pending charges and the nature of the underlying incident fully support a *temporary* adjustment of plaintiff's security status. However, there comes a point where a temporary reclassification takes on characteristics of a long term disciplinary action. Absent further evidence relating to the reasons why plaintiff had not been brought to trial on charges stemming from the stabbing incident, this Court is not convinced that plaintiff's ten-month confinement in C-building can be justified under *Almanza.* The rationale underlying an *Almanza* reclassification is weakened in this case as release to the general population would not place plaintiff in the same prison facility as he had been prior to the incident giving rise to the issues herein. Hence, the likelihood of retaliation or related violence is substantially reduced. Moreover, plaintiff denies that he was returned to the general population on October 31, 1975. It is not clear, then, whether plaintiff remains in maximum security or not. Thus, a serious question of fact remains in dispute. For the above stated reasons, defendants' motion for summary judgment must be denied.[3]

An appropriate order will be issued.

2. Plaintiff complains that the reclassification has deprived him of

(1) being able to receive visits from his family;

(2) normal exercising privileges;

(3) normal bathing facilities;

(4) opportunity to participate in rehabilitative, vocational or educational programs offered other inmates;

(5) an additional meal a day.

See *Breeden v. Jackson,* 457 F.2d 578, 581 n. 2 (4th Cir. 1972) (Craven, J., dissenting).

3. The Court is aware of the delicate problem facing prison officials during the aftermath of a stabbing incident. Temporary isolation of suspected inmates is needed to preserve the safety and security of the prison and its population. But if long term changes in a prisoner's security classification are to result, the prisoner is to be afforded various due process guarantees. See *Wolff v. McDonnell,* 418 U.S. 539, 555–56, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Landman v. Royster,* 333 F.Supp. 621 (E.D.Va.1971). If formal disciplinary proceedings are held prior to adjudication of pending criminal charges, a prisoner could be faced with a difficult choice. He could defend himself at the ICC hearing with the danger of incriminating himself in the pending criminal charge. This danger is especially evident when the prisoner is not afforded counsel at the ICC hearing. See *Wolff, supra,* 418 U.S. at 569–70, 94 S.Ct. 2963 (1974). Alternatively, the prisoner could remain silent at the ICC hearing and face the potential deprivation of privileges associated with maximum security status. Remaining silent in an attempt to preserve constitutional guarantees associated with criminal proceedings does not afford an inmate an effective opportunity to defend charges of institutional infractions. The best solution, of course, is prompt disposition of the pending criminal charges.