Walter PHILLIPS, Plaintiff,

v.

Paul KEVE, Director, et al., Defendants.

Civ. A. No. 76–259.

United States District Court,
D. Delaware.

Nov. 24, 1976.

Walter Phillips, pro se.

Keith A. Trostle, Asst. Atty. Gen., Dept. of Justice, Wilmington, Del., for defendants.

## MEMORANDUM OPINION

LATCHUM, Chief Judge.

Walter Phillips ("plaintiff") is a state prisoner now incarcerated at the Sussex Correctional Institution serving a six month sentence imposed on July 1, 1976 for the crime of menacing.[1] He has brought this civil rights action based on 42 U.S.C. § 1983 against the defendants, correctional officials, seeking injunctive relief, compensatory and punitive damages. The complaint alleges (1) that the defendants denied him adequate medical attention for his heart condition in violation of the Eighth Amendment ban on cruel and unusual punishment, and (2) that the defendants placed the plaintiff in "punitive isolation" for 24 hours without the benefit of a prior hearing on three different occasions in violation of the Due Process clause of the Fourteenth Amendment.[2]

The Court issued process on the complaint and required the defendants to respond thereto and to submit verified administrative records or affidavits directed to these issues.[3] Defendants so responded and moved to dismiss.[4] The plaintiff, having been given the opportunity to controvert the specifics of the defendants' sworn admissions,[5] filed a further affidavit.[6] In the light of the sworn submissions by the parties, defendants' motion to dismiss will be treated as a motion for summary judgment. Rule 12(b), F.R.Civ.P.

### 1. Claims of Inadequate Medical Attention

From the verified medical records and affidavits filed by the parties, the following undisputed material facts emerge. Upon transfer on July 12, 1976 to the Sussex Correctional Institution, plaintiff complained of chest and shoulder pains and was immediately examined by Dr. Park, the prison physician. Plaintiff stated that he had rheumatic fever in 1954 and had been hospitalized for chest pains sometime about four to eight months earlier in the Delaware Division of the Wilmington Medical Center in Wilmington ("Delaware Division"). Dr. Park's examination revealed that the plaintiff's heart beat was normal and there was no murmur. During Dr. Park's examination plaintiff was "belligerent and nasty" and demanded an immediate transfer to the Delaware Division. However, Dr. Park referred the plaintiff on the same day to the Beebe Hospital at Lewes, Delaware for an electrocardiogram. The results of the electrocardiogram did not show a defective heart. On July 13, plain-

---

1. Docket Items 2 & 5. 11 Del.C. § 602 provides that a person is guilty of menacing when by some movement of his body or any instrument he intentionally places another person in fear of imminent physical injury.

2. Docket Item 2.

3. Docket Item 1, pars. 3, 4 & 5.

4. Docket Item 5.

5. Docket Item 1, par. 6.

6. Docket Item 6.

tiff was sent to the Delaware Correctional Center at Smyrna for examination by the Center's prison physician in order to obtain a second medical opinion. The Center's doctor, although noting no unusual heart murmur, nevertheless scheduled plaintiff for an appointment on August 3 at the Delaware Division's Cardiac Clinic. The clinic's examination revealed that plaintiff's cardiogram results had not changed from those shown in the Beebe Hospital report. Upon being referred to the clinic again on August 17, the clinic declared plaintiff fit and found there was no need for any further clinic visits.

 While the plaintiff may still believe that the medical attention that he received was inadequate, he does not dispute the record that several physicians were involved in examining and treating him as shown by his medical records. Under no plausible interpretation of the uncontroverted facts can it be said the record establishes a § 1983 claim on this issue. It is well settled that a medical claim under § 1983 arises only when defendants' conduct "shocks the conscience" by, for example, a deliberate indifference to a prisoner's request for necessary medical treatment. *Williams v. Vincent*, 508 F.2d 541, 543–44 (C.A. 2, 1974). Furthermore, no § 1983 claim arises from the mere allegation of negligence in the treatment of a prisoner's condition or when the claim is based on differences over matters of medical judgment. *Jones v. Lockhart*, 484 F.2d 1192, 1193 (C.A. 8, 1973); *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (C.A. 3, 1970). Accordingly, summary judgment in favor of the defendants will be granted on plaintiff's § 1983 claim of inadequate medical attention.

### 2. *Claim of Lack of Due Process*

With respect to plaintiff's allegations that he was placed in "punitive isolation" for 24 hours without the benefit of a prior due process hearing in violation of the Fourteenth Amendment, the undisputed material facts establish the following. At about 5:30 P.M. on Friday, July 16, 1976 while in the prison dining room, plaintiff approached Captain Quillen and began complaining about the prison medical staff and that he wanted to see the doctor immediately. Captain Quillen advised him that the doctor and nurse had left the prison for the day but that he would give him some aspirin if he wished. This, however, did not satisfy the plaintiff who continued to complain in a loud voice. Captain Quillen ordered plaintiff to return to his seat and sit down. When he continued to complain loudly, Captain Quillen imposed a "24 hour lock-up" to run from 5:30 P.M. on Friday, July 16 until 5:30 P.M. on Saturday, July 17, 1976.

After being escorted from the dining room to his cell by Officers Cooper and Wyatt, plaintiff was stripped, searched and two nickels and a metal hairpick, deemed contraband under prison regulations,[7] were found in plaintiff's possession. For violating the contraband regulation, Officer Cooper placed the plaintiff on a "24 hour lock-up" from 5:30 P.M. on Saturday, July 17 until 5:30 P.M. on Sunday, July 18, 1976.

At about 1:45 P.M. on Monday, July 26, 1976, plaintiff appeared at the medical section of the prison without a pass because he felt sick. When he became tired of waiting his turn to see Dr. Park, who was then giving a physical examination to another inmate, he abruptly entered the examining room demanding loudly and in abusive language that the doctor should see him immediately. When he refused a direct order to leave the doctor's examining office and return to the waiting room, he was placed by Nurse Melvin on "24 hour lock-up" from 3:00 P.M. on Monday, July 26 until 3 P.M. on Tuesday, July 27, 1976. Because plaintiff was not afforded a hearing in advance of the three lock-ups, he claims that he was denied due process of law. The Court is unable to agree.

Under the applicable prison regulations, among other things, loud talking, refusing to obey an order, using abusive language and possession of contraband are considered

---

7. Regulations, Inmates Reference Manual, p. 4.

to be "minor infractions." [8] The rules also provide that—

> "24-Hour Lock Ups . . . can be given by a Correctional Officer for a minor infraction of the rules. The officer shall present a write-up form stating exactly what took place and why the inmate was placed on the 24-hour lock-up. This form shall be forwarded to the Hearing Officer who will see that it becomes a part of the inmate's record. The inmate shall be confined for a 24-hour period from the time of the offense. This does not include school or work but only leisure hours." [9]

The regulations further provide that upon receiving a sanction and "write-up" for a minor infraction, the inmate may review and discuss the matter with the Hearing Officer, who, in cases of minor infractions, is usually the Guard Lieutenant of the shift during the time the infraction occurred.[10]

In the present case the uncontroverted record reveals that the above regulations were followed. Incident reports were immediately written up at the time each minor infraction occurred, a copy of the report was given to the plaintiff and one was delivered to the Minor Infraction Hearing Officer. However, there is no indication that plaintiff requested a review or discussion of the incident report and sanctions received with the Hearing Officer. The question then becomes did this procedure afford the plaintiff the process due under the Fourteenth Amendment.

Whether any procedural protections are due in a prison setting depends upon "the extent to which an individual will be 'condemned to suffer grievous loss,'" *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972), because "due process negates any concept of inflexible procedures universally applicable to every imaginable situation," *Cafeteria Workers v. McElroy,* 367 U.S. 886, 895, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961), and "viewed in this light it is immediately apparent that

one cannot automatically apply procedural rules designed for free citizens in an open society, or for parolees or probationers under only limited restraints, to the very different situation presented by a disciplinary proceeding in a state prison." *Wolff v. McDonnell*, 418 U.S. 539, 560, 94 S.Ct. 2963, 2977, 41 L.Ed.2d 935 (1974). Thus, the due process clause provides a flexible standard which varies with the attendant circumstances. When considered in a prison situation, there must be a mutual accommodation between institutional needs and objectives and generally applicable constitutional requirements.

Thus, the Supreme Court in *Wolff* held that a prisoner, who could be deprived of good time credits and who could be placed in solitary confinement for serious misbehavior or a major act of misconduct, was constitutionally due procedures requiring: advance written notice of the charges at least 24 hours before the inmate's appearance before the adjustment committee, (2) the factfinder must give written reasons for its findings, and (3) the inmate should be allowed to call witnesses and present documentary evidence in his defense, if permitting him to do so would not prejudice prison safety or correctional goals. However, the Court in *Wolff*, fn. 19, at 572, 94 S.Ct. at 2982, at fn. 19 clearly stated:

> "We do not suggest, however, that the procedure required by today's decision for the deprivation of good time would also be required for the imposition of lesser penalties such as the loss of privileges."

In the present case each of the three minor infractions for which punishment was imposed occurred in the presence of the correctional officers who imposed the sanction of restricting the plaintiff to his cell for 24 hours and then only during his leisure time since the rule did not require cell restriction during work or school periods. The sanctions simply amounted to withdrawing plaintiff's privilege during his leisure time over a 24 hour period of having

---

**8.** *Id.* at p. 12.

**9.** *Id.* at p. 15.

**10.** *Id.* at p. 14.

the run of the tier. This "on-the-spot correction," involving only slight punishment of cell restriction during leisure hours does not amount to "a grievous loss" calling for all the procedural protections of *Wolff, supra.*

Indeed, the more limited protection that was afforded the plaintiff appears to meet due process under the circumstances because when the "on-the-spot" punishment was imposed, the officer wrote up an incident report explaining what happened and the reasons for the punishment and a copy was given the inmate and one forwarded to the Shift Lieutenant (the Hearing Officer) who was available to discuss the report with the inmate if so requested. This on-the-spot correction procedure for minor infractions substantially conforms to due process Standard 2.12 recommended by the National Advisory Commission On Criminal Justice Standards and Goals (1973).[11] See also *Avant v. Clifford,* 67 N.J. 496, 341 A.2d 629, 641 (1975).

■ The Court concludes that the due process protections afforded the plaintiff in all three "on-the-spot" corrections imposed by the officer who viewed the incidents were sufficient, particularly in view of the slight restrictions imposed on plaintiff's leisure time during the 24 hour period.

It is well recognized that in most prison situations, good control may be maintained by the principle of certainty—that is, certainty that misbehavior will not go unnoticed but that immediate steps will be taken to correct it. This is an application of the concept that it is the certainty rather than the severity of correction that affords the greatest deterrent. On the other hand, if every minor infraction committed by an inmate which was prejudicial to good order was required to be adjudicated with the full

panoply of due process rights required for a major offense for which punishment could result "in a grievous loss," little else would be accomplished in prison. In such a situation the correctional value of short term on-the-spot withdrawal of privileges would be lost in red-tape and uncertainty.

The Court, therefore, finds, as a matter of law on the undisputed material facts, that plaintiff was not denied the process due him on the three occasions that he received 24 hour lock-ups. Therefore, summary judgment will be granted in defendants' favor on the due process issue.

An order will be entered in accordance with this opinion.

---

11. Standard 2.12 in substance provides that minor violations are those punishable by no more than a reprimand, or loss of commissary, entertainment or recreation privileges for not more than 24 hours. Rules governing minor violations should provide: (1) that the staff may impose the prescribed sanctions on informing the offender of his offense and giving him a chance to explain, and (2) if a report is

placed in the offender's file, he should be so notified, and (3) if the offender so requests, he should have the opportunity to have the report reviewed by an impartial member of the staff as to appropriateness of the corrective action, and (4) where the review indicates the offender did not commit the offense or the staff action was inappropriate, all reference to the incident should be removed from the offender's file.