**Dossie FAISON et al., Plaintiffs,**

v.

**Walter M. RIDDLE, Superintendent, Defendant.**

**Civ. A. No. 75–0669–R.**

United States District Court, E. D. Virginia, Richmond Division.

Jan. 7, 1977.

maximum of an approximate 40% increase in pension benefits.

Mathew N. Ott, Jr., Richmond, Va., for plaintiffs.

Patrick A. O'Hare, Asst. Atty. Gen. of Va., Richmond, Va., for defendant.

## MEMORANDUM

MERHIGE, District Judge.

Plaintiffs, several inmates incarcerated in the Virginia State Penitentiary, bring this action to redress alleged constitutional deprivations stemming from a lock-up occurring in the fall of 1975. Walter M. Riddle, the Warden who ordered the lock-up, is named as defendant. Jurisdiction is attained pursuant to 28 U.S.C. § 1343(3). The matter comes before the Court on the defendant's motion for summary judgment and the plaintiffs' response thereto. The material facts are not in dispute.

On October 27, 1975, defendant Riddle ordered a general prison lock-up and shakedown (a general search of the cells) following an escape attempt and a stabbing incident which had occurred the previous day. This general lock-up lasted until October 31, 1975. Increased tension and rumors of pending violence prompted a second lock-up on November 3, 1975. In the course of these lock-ups, inmates were questioned by "screening committees" in an effort to ascertain the cause of the tension and defuse potential disturbances. During the screening process of the second lock-up, H. G. Spann, Institutional Investigator at the Penitentiary, received information from several inmate sources to the effect that plaintiffs Faison, Hall, Anderson and Givens were involved in a plot to take hostages and assassinate the Warden. These plaintiffs were, at that time, all housed in B-Cell and will hereinafter be referred to as the B-Cell plaintiffs. Spann additionally received information from inmate sources to the effect that plaintiffs McGhee, Elkins, Gilliam and Boisseau were also conspiring to assassinate the Warden. These plaintiffs had been assigned to A-Cell and will be referred to as the A-Cell plaintiffs. Both matters were referred to the State Police for an investigation.

From November 3, 1975 until November 21, 1975, the plaintiffs were confined to their respective cells. They were provided two hot meals and one sandwich per day. Showers were made available every third day. No exercise periods or visitation privileges were permitted. On November 21, 1975, the plaintiffs were brought before the Institutional Classification Committee (ICC) for purposes of evaluating their security status. Each inmate was given written notice of the hearing 24 hours in advance; each inmate was present at the hearing and afforded the opportunity to testify in his own behalf. Counseling services were also made available. The ICC considered the evidence pertaining to the alleged plot to assassinate Warden Riddle. Due to the serious nature of the charges, the ICC recommended immediate assignment of each

plaintiff to a higher security status pending the results of the State Police investigation.

The plaintiffs were thereupon confined to cells in an increased security area. There is a discrepancy in two of the affidavits submitted by the defendant as to the particular building in which the respective plaintiffs were confined subsequent to the November ICC hearing. Such discrepancy is not, in the Court's view, material. While incarcerated under padlock, the plaintiffs were given two hot meals and one sandwich per day. The caloric content of the food provided each inmate never fell below 3,400 calories per day. A minimum of two showers per week were afforded each of the plaintiffs. Additionally, they were allowed to receive visitors once a week and were permitted to exercise twice a week. Beginning December 24, 1975, the plaintiffs were allowed to leave their cells and go into the dormitory area of the building from 9 a.m. to 3 p.m., and shower and exercise opportunities were available during this period.

On December 5, 1976, the A-Cell plaintiffs were again brought before the ICC. Prior notice, inmate attendance and counseling services marked the hearing. Each inmate was informed that the State Police had concluded that there was insufficient evidence to support criminal charges. In view of the reduced tension at the Penitentiary and Warden Riddle's transfer to another unit, the ICC recommended that the A-Cell plaintiffs be returned to their previous custody status. This recommendation was accepted by the Central Classification Board (CCB) on January 7, 1976 whereupon the A-Cell plaintiffs were released to the general population. As the State Police investigation had not been completed as to the alleged B-Cell plot, those plaintiffs remained in padlock custody. On January 30, 1976, the B-Cell plaintiffs appeared before the ICC. The procedural safeguards of notice, counseling services and attendance were adhered to. Like the other plaintiffs, they were informed of the State Police determination that there was insufficient evidence to support criminal prosecutions. Again, as a result of Warden Riddle having

been transferred and the emotionally calmer atmosphere within the facility, the ICC recommended that the plaintiffs be returned to the general population at their previous custody classification. These recommendations were approved by the CCB on February 2, 1976.

The Court is satisfied that the thorough State Police investigation was warranted by the serious nature of the allegations. Numerous persons were interviewed and some of the informers were subjected to polygraph examinations. The polygraph examinations proved to be inconclusive. There is no evidence that the investigation was unduly protracted or used as a pretext for punishment.

■ The record amply supports the Court's conclusion that no deprivation of due process rights resulted from the emergency lock-up procedures utilized in the instant situation. There is no disputing the occurrence of the attempted escape, the stabbing incident and the reception by prison officials of tips concerning an alleged conspiracy to assassinate the Warden. Such circumstances warrant the taking of prophylactic measures. *La Batt v. Toomey*, 513 F.2d 641 (7th Cir. 1975); *Hoitt v. Vitek*, 361 F.Supp. 1238 (D.N.H. 1973), aff'd, 497 F.2d 598 (lst Cir. 1974). Each ICC hearing held in the instant matter, moreover, was conducted in compliance with the mandates of the due process clause. *See Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Landman v. Royster*, 333 F.Supp. 621 (E.D.Va. 1971).

■ This Court has previously held that where there is reason to believe that an inmate is engaged in criminal conduct, a temporary increase in his custody status pending disposition of the criminal matter is justified notwithstanding the absence of any adjudicated finding of a violation of prison regulations. *Patterson v. Riddle*, 407 F.Supp. 1035, 1037 (E.D.Va. 1976); *Almanza v. Oliver*, 368 F.Supp. 981 (E.D.Va. 1973). Such action must be predicated upon a good faith reasonable belief that the inmate has engaged in criminal conduct and the duration of the reclassification must not be so

great as to smack of disciplinary action. In the instant case, both factors are present. The rumors of a plot to assassinate the prison warden obtained from several sources in the aftermath of a stabbing incident could not be ignored. The detention of the plaintiffs in maximum security status pending the State Police investigation was, in the Court's view, entirely appropriate. The investigation itself appears to have been both thorough and prompt. There is not the slightest hint that the defendant's action was anything other than what it purported to be—a reasonable security measure rather than a subterfuge for punishment. The Court, concludes, therefore, that the temporary lock-up of these plaintiffs under the then existing circumstances was entirely appropriate.

The plaintiffs' final contention relates to the conditions to which they were subjected during their lock-up. These conditions, heretofore described, were not violative of the Eighth Amendment prohibition against cruel and unusual punishment. Indeed, the conditions compare favorably with those upheld in *Sweet v. South Carolina Department of Corrections*, 529 F.2d 854, 860–62 (4th Cir. 1975). (en banc)

An appropriate order will issue.

### ORDER

For the reasons stated in the Memorandum of the Court this day filed, and deeming it proper so to do, it is ADJUDGED AND ORDERED that the defendant's motion for summary judgment be, and the same is hereby, granted and judgment be, and the same is hereby, entered for the defendant.

Let the Clerk send a copy of this Order and the accompanying Memorandum to all counsel of record.