**Thomas LeGRANDE, Plaintiff,**

v.

**Walter REDMAN, Warden and Chief Pippin, Defendants.**

**Civ. A. No. 77–105.**

United States District Court, D. Delaware.

June 15, 1977.

Thomas LeGrande, pro se.

John A. Parkins, Jr., Asst. Atty. Gen., Wilmington, Del., for defendants.

LATCHUM, Chief Judge.

Thomas LeGrande ("plaintiff"), a state prisoner confined at the Delaware Correctional Center ("DCC"), brings this action under 42 U.S.C. § 1983 to redress alleged constitutional deprivations by defendants in temporarily confining plaintiff to maximum isolation pending investigation into his suspected involvement in an assault upon a

prison guard.[1] The complaint liberally construed alleges (1) that the defendants placed the plaintiff in isolation without a prior hearing in violation of the Due Process clause of the Fourteenth Amendment, (2) that confinement in isolation constitutes cruel and unusual punishment forbidden by the Eighth Amendment, and (3) that there was insufficient evidence to justify plaintiff's transfer to isolation. Defendants Redman and Pippin are the warden and security superintendent at DCC, respectively. Plaintiff seeks $10,000 in damages.

The defendants when answering the complaint also filed an affidavit and verified administrative record; they have now moved for summary judgment.[2]

█ The facts surrounding plaintiff's complaint relating to his brief confinement in isolation are uncontested.[3] On January 20, 1977, at approximately 2:00 P.M., Officer George Patterson was stabbed several times by a group of inmates on C block of the maximum security building. Patterson was able to identify his assailants and the plaintiff was among those identified. Because Patterson's initial implication of the plaintiff was somewhat vague, however, Pippin did not immediately order plaintiff's transfer to isolation. At 3:45 P.M. after Patterson was treated at a local hospital he reasserted his belief that the plaintiff was involved in the assault. In light of this second and more convincing implication Pippin ordered the plaintiff transferred to isolation pursuant to "Rule 31 of the Inmate Reference Manual pending an interview and investigation."[4] Upon notification that his transfer was "based upon [his] alleged involvement in an assault upon Correctional Officer George Patterson" and that solitary confinement would "prevail

until disposition his determined through investigation," the plaintiff was placed in isolation without incident.[5] Following a preliminary investigation and interview at which the plaintiff was advised of his rights and permitted to tell his side of the story, the Rule 31 confinement was lifted at approximately 6:00 P.M., evidently because Officer Patterson's opinion began to vacillate and because other evidence was inconclusive.[6]

From the undisputed record it is evident that the plaintiff's rights to due process of law and to be free from cruel and unusual punishment were not violated in this case. As a matter of law, therefore, plaintiff has not presented a claim under 42 U.S.C. § 1983 for which relief can be granted.

█ First, the cases are unanimous in holding that the state's legitimate interest in prison security justifies a policy whereby prisoners may, consistent with due process, be summarily confined in solitary whenever the security of the institution requires. *See, e. g., Bickham v. Cannon,* 516 F.2d 885 (C.A. 7, 1975); *Braxton v. Carlson,* 483 F.2d 933 (C.A. 3, 1973); *Gray v. Creamer,* 465 F.2d 179 (C.A. 3, 1972); *Patterson v. Riddle,* 407 F.Supp. 1035 (E.D.Va.1976); *Johnson v. Anderson,* 370 F.Supp. 1373 (D.Del.1974). When the emergency or other threat to security subsides, however, the inmate if he is to be kept in his new status must be given notice of charges and an opportunity to respond. *See LaBatt v. Twomey,* 513 F.2d 641 (C.A. 7, 1975).

█ Based upon Patterson's identification of the plaintiff and his presence at the scene of the assault, there was a reliable basis in fact for Pippin's decision to temporarily confine plaintiff to solitary for his

---

1. Docket Item 2.

2. Docket Item 6.

3. Although the plaintiff was afforded the opportunity and invited to controvert defendants' submissions by an affidavit specifically denying any fact therein stated, he did not do so. Docket Item 1, par. 6.

4. Docket Item 6 at 2. Rule 31 is an emergency regulation which provides, *inter alia,* that offi-

cials of the institution may temporarily reassign, segregate or sequester inmates when faced with an immediate threat to the security or safety of the institution or any of its employees or inmates.

5. Docket Item 5, Ex. D.

6. Docket Item 6 at 2 & Ex. E.

*alleged* participation in a gang attack upon a guard, "an offense as serious as any known to the prison environment"[7] and one which posed a definite threat to the security and safety of the institution. Therefore, summary action was clearly warranted and no prior hearing was required before the plaintiff could constitutionally be committed to isolation. Furthermore, since it is undisputed that the plaintiff received notice of the reason for the transfer to isolation and within two hours afforded an opportunity to respond, the Court concludes as a matter of law that defendants did not violate plaintiff's due process rights. *Cf. Phillips v. Keve,* 422 F.Supp. 1136 (D.Del.1976); *Patterson v. Riddle, supra,* 407 F.Supp. at 1037–38.

■■■ Second, with respect to the conditions of plaintiff's confinement, it is clear that isolation is not *per se* cruel and unusual punishment and that temporary discomforts and inconveniences incident thereto do not afford a basis for judicial relief. *United States ex rel. Tyrrell v. Speaker,* 471 F.2d 1197, 1200–1201 (C.A. 3, 1973); *Ford v. Board of Managers of New Jersey State Prison,* 407 F.2d 937, 940 (C.A. 3, 1969). The test is whether the conditions of any particular confinement when measured against "evolving standards of decency that mark the progress of a maturing society" offends the conscience of contemporary society. *Trop v. Dulles,* 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 630 (1958). In this respect, courts frequently consider the duration and harshness of the confinement and the seriousness of the infraction of prison rules for which it was imposed.

The plaintiff was confined in isolation based on Patterson's assurances that he was among the probable perpetrators of the assault and on the good faith belief that the security of the prison and its employees required his temporary confinement in isolation. Although such confinement entails a drastic reduction in the privileges and comforts available in a less secure status, it does not amount to confinement of inhuman and barbaric proportions when con-

sidered in light of its brevity and the cause for its imposition.

Finally, the plaintiff challenges the motivation and the evidence supporting the order for his transfer to isolation. But the essential fact—the plaintiff's identification by the victim as one of the probable perpetrators of the assault—is asserted in an affidavit accompanying defendant's answer and motion for summary judgment and is not denied in a counter-affidavit filed by the plaintiff. Since an adequate basis to support temporary solitary confinement until an investigation was concluded is reflected in the undisputed record, no claim for which relief can be granted under 42 U.S.C. § 1983 is presented. *See Jackson v. McLemore,* 523 F.2d 838 (C.A. 8, 1975).

The Court will enter an order granting defendants' motion for summary judgment.

---

7.   *Johnson v. Anderson, supra,* 370 F.Supp. at 1391.