**Ralph DAYTON, Plaintiff,**

v.

**David SAPP and Robbin E. Vann, Individually and as Members of the Town of Milford Police Department, Defendants.**

**Civ. A. No. 86–207–JRR.**

United States District Court,
D. Delaware.

Sept. 3, 1987.

---

William D. Fletcher, Jr., and Kevin M. Howard, of Schmittinger & Rodriguez, P.A., Dover, Del., for plaintiff.

Jeffrey S. Goddess, of Saul, Ewing, Remick & Saul, Wilmington, Del., for defendants.

## OPINION

ROTH, District Judge.

This is a civil rights action in which plaintiff Ralph Dayton has claimed damages against defendants David Sapp and Robbin E. Vann, of the Milford Police Department, for personal injuries suffered as a result of defendants' actions on the night of May 4–5, 1985. Plaintiff claims that defendants deprived him of his civil rights, under 18 U.S.C. § 1983, by using unlawful and excessive force on him at the Milford police station. Specifically, defendants allegedly sprayed Dayton in the face with Mace from a very close range, without any provocation by plaintiff, and then improperly denied him medical treatment and care.

A five day trial was held on June 15, 1987. The jury found that the defendants did not use unconstitutionally excessive force in Macing the plaintiff and that they did not display a deliberate indifference to the medical needs of plaintiff after he had been Maced. Plaintiff has moved for a new trial, pursuant to Rule 59 of the Federal Rules of Civil Procedure, based solely on the claim that the verdict is against the weight of the evidence.

## BACKGROUND

On the evening of May 4, 1985, the plaintiff was drinking at the Dockside Lounge in Milford, Delaware when he was asked to leave because he was apparently creating a disturbance. A scuffle ensued between plaintiff and three bouncers, the police were called and Dayton was taken into custody and driven to the Milford police station.

The testimony, as to what happened once Dayton arrived at the police station, varied significantly between plaintiff's version and that of the two defendants and the

other police officers present. Defendants contend that the Macing occurred in one of the interview rooms of the police station while defendant Vann was trying to complete the necessary paperwork on Dayton. With his hands still handcuffed behind his back, Dayton, who was visibly intoxicated, allegedly began kicking the table and chairs in the interview room. He would not stop and began kicking at Corporal Vann as well. Defendant Sapp then asked "Mace him?" and Vann replied, "Yeah, Mace him." Sapp shot two bursts of Mace directly into Dayton's face from a distance of one to two feet. Dayton was then taken to a cell where he remained for an hour or so until Sapp drove him to the all-night courtroom in Georgetown.

Plaintiff, on the other hand, testified that he was not being disruptive at either the bar or the police station. Dayton claimed that, when he arrived at the police station, he was dragged by Sapp and Vann, without provocation and while still handcuffed, from the car to the door of an open cell. He felt something cold on the side of his face and the Mace was then squirted directly into his eye. After the Macing, Dayton was allegedly thrown into the cell with his hands still handcuffed behind his back. Plaintiff testified that he screamed that his face felt like fire and asked for help for his eyes. Defendants countered that no medical help was given because none was ever requested by Dayton.

The Magistrate at the night court in Georgetown set a bond of $750 on Dayton, but because no one put up $75, the 10 percent required in cash or property, plaintiff was detained at the Sussex Correctional Institution (SCI) in Georgetown. The nurse, who performed Dayton's health evaluation interview when he was brought to SCI apparently at that time noticed no injury to Dayton's eyes or face. The following morning, Sunday, May 5, Dayton did complain of eye pain and irritation. He was examined by the shift nurse at SCI who noticed that his face was inflamed and his eyes were nearly swollen closed. His eyes were rinsed at that time and an antihistamine cream was applied to reduce swelling.

On Monday morning, plaintiff was arraigned and released to relatives who took him to Milford Hospital for treatment. Medical reports confirm the existence of an eye injury known as "dry eye", which was caused by the chemical burn from the Mace. Plaintiff continues to suffer from this condition.

## DISCUSSION.

Plaintiff's motion for a new trial is based solely on the contention that the jury's verdict is against the clear weight of the evidence. When a new trial is requested on that basis alone, the Court's discretion to grant such a request is limited because the trial judge is, to a degree, being asked to substitute his or her own fact finding for that of the jury. *Lind v. Schenley Industries, Inc.*, 278 F.2d 79, 90–91 (3d Cir.1960), *cert. denied*, 364 U.S. 835, 81 S.Ct. 58, 5 L.Ed.2d 60 (1960); *Rose Hall Ltd. v. Chase Manhattan Overseas Banking*, 576 F.Supp. 107, 124 (D.Del.1983), *aff'd*, 740 F.2d 958 (3d Cir.1984).

> The trial judge ... should ... abstain from interfering with the verdict unless it is quite clear that the jury has reached a seriously erroneous result. The judge's duty is essentially to see that there is no miscarriage of justice. If convinced that there has been, then it is his duty to set the verdict aside; otherwise not.

*Lind*, 278 F.2d at 89 (quoting 6A Moore's Federal Practice ¶ 59.08[5] 1986).

█ Two separate issues were presented to the jury in this case. The first was whether the application of Mace against the plaintiff was an unconstitutional use of force. The second was whether the subsequent lack of medical treatment was so deficient as to be unconstitutional. In order for the use of force by police officers to be unconstitutional, the force must be so unreasonable or excessive, under the circumstances, as to "shock the conscience." *Black v. Stephens*, 662 F.2d 181, 188 (3d Cir.1981). The jury found that defendants' conduct did not shock the conscience.

■ The failure of police officers to provide adequate medical care to a prisoner rises to the level of unconstitutional conduct when there is a "deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). *Phillips v. Keve,* 422 F.Supp. 1136, 1138 (D.Del.1976). A negligent or inadvertent failure to provide medical care is not enough. The jury found specifically that defendants' conduct after the Macing did not constitute a deliberate indifference to Dayton's serious medical needs. Dayton now claims that the findings by the jury on these two issues constitute a miscarriage of justice and mandate the granting of a new trial.

The most abusive picture presented to the jury as to how and why Dayton was Maced, came from the testimony of the plaintiff himself. According to Dayton, he was dragged into the police station, while his hands were handcuffed behind his back. Dayton then claims that, before throwing him into a cell, one of the police officers held a cold can next to his face and the Mace was sprayed directly into his eye. If this testimony were true, the Macing of plaintiff would indeed be shocking to the conscience. Indeed, defendants' attorney asked the jury to find for the plaintiff if they believed his version of what occurred. However, it is obvious that the jury did not consider plaintiff's testimony very credible. This is not surprising to the Court, because in listening to the two versions of what took place at the Milford Police Station, we also found Dayton's testimony lacked credibility.

If, on the other hand, we consider the testimony of the defendants and of the other police officers, Dayton was intoxicated and very hard to handle. He was making it extremely difficult for defendant Vann to get the necessary paperwork completed on the arrest. The scene became ugly when Dayton began kicking the chairs and table and then trying to kick Vann and to pin Vann between the wall and the table by kicking at it. At that point, Sapp, who had never used Mace before, asked Vann if he should Mace the plaintiff. Vann replied, "Yeah, Mace him." Sapp didn't know and hadn't read the directions on the Mace can that stated Mace could cause chemical burns and should be shot toward the chest area, not the face, from a distance of six to eight feet. Sapp also had never heard before this incident of anyone receiving any injury from Mace. On getting the concurrence from Vann that he use Mace, Sapp simply sprayed two bursts of Mace at Dayton's face from a distance of one to two feet.

■ Plaintiff contends that, even accepting the defendants' story as true, the Macing of Dayton under those circumstances was shocking to the conscience. However, we are not prepared to hold that the chain of events, as testified to by the defendants, demonstrates an excessive or unreasonable use of force, which by its very nature, is shocking to the conscience.

Defendants' conduct in attempting to control Dayton may not have been the best course of action under the circumstances. Indeed, it displayed a level of experience in handling unruly prisoners that was below what one would hope to observe in a trained police officer. However, there was ample testimony in the record to indicate that plaintiff was intoxicated and abusive and that he was kicking at defendant Vann. Sapp then offered his assistance in controlling Dayton. One can argue that optimally Sapp should have tried other methods of helping to subdue Dayton or that Sapp should have stood farther from Dayton and aimed the Mace at Dayton's chest rather than his face. However, in light of the ongoing commotion in the room, the jury could reasonably have concluded that under the circumstances defendants' conduct was not so excessive as to be shocking to the conscience. The standard here is not negligence or carelessness on the part of the police officers, but rather a use of force by them that is so unreasonable that it shocks the conscience. The jury was instructed that the above standard was the one they should apply. There is sufficient evidence to support their verdict that defendants' conduct was not shocking.

There is also conflicting evidence on the issue of the medical care received by Dayton after the Macing. The main area of disagreement is whether or not Dayton complained of burning and discomfort. Dayton testified that he continually cried out, complaining of the pain but got no assistance. Defendants and other witnesses testified that they had no recollection of Dayton ever complaining of pain or burning or of his asking for medical assistance. Dayton did finally ask for medical attention from the SCI nurse on Sunday morning. At that point he was treated.

 Again, if plaintiff's testimony were credible on this issue, we would probably have to conclude that defendants were deliberately indifferent to Dayton's serious medical needs. However, all of the testimony, except that of Dayton, indicates that he did not request medical assistance from the defendants and that, while Dayton was in the custody of the Milford Police, his physical appearance did not manifest any medical problem which required immediate attention. Moreover, when Dayton had the opportunity to wash his hands after being fingerprinted, he made no effort and apparently felt no need to wash out his eyes.

Judge Pollard, the magistrate who set bail for Dayton in the early morning hours following the Macing, could not recall that he noticed any redness or swelling of Dayton's eyes or that Dayton complained of any burning in his eyes. The nurse, who examined Dayton upon his arrival at SCI, did not write anything in her notes about Dayton's eyes or facial burns. In fact, there was testimony that it was the customary practice at SCI not to admit prisoners who were in need of medical attention. Any prisoner, needing care, would be taken to a doctor or hospital first so that SCI would not be required to pay the bill for that care. The nurse, who examined Dayton upon his arrival at SCI, apparently did not feel that he needed medical attention since she did not send Dayton to a doctor or hospital.

Sapp, who drove Dayton to court in Georgetown, testified that, even though his own eyes were stinging from the Mace, he still did not think that Dayton's eyes required medical treatment. This may very well be a negligent response from a trained police officer who had just used the Mace as a weapon. However, the standard is not negligence but "deliberate indifference to serious medical needs." There is sufficient evidence here to support the jury's determination that there was no such "deliberate indifference."

## CONCLUSION

Viewing the evidence in the light most favorable to the non-moving party, we find that there is sufficient evidence to support the conclusion of the jury both that defendants did not use an unreasonable and excessive application of force, not justified by the circumstances, which shocks the conscience, and that there was no deliberate indifference to the serious medical needs of plaintiff. For that reason, we will not interfere with the jury's verdict. Plaintiff's motion for a new trial will be denied.

An appropriate order will follow.